IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19 CR 733-2 |
| | ) | Magistrate Judge Maria Valdez |
| RICK OWEN, et al. | ) | |
| | ) | |
| Defendant. | ) | |

**Closing Memorandum of Rick Owen on Motion to
Dismiss Complaint for Lack of Probable Cause**

Defendant Rick Owen, by and through his attorney, hereby moves this Court, pursuant to Federal Rule of Criminal Procedure ("Fed.R.Crim.P.") 5.1 to dismiss this case against him for lack of probable cause. In support of this motion, he states the following:

**I.  Introduction**

1.  On September 20, 2019, the United States Attorney's Office ("USAO") filed a criminal complaint against three defendants, one of whom is Defendant Rick Owen ("Mr. Owen"). [Doc. #1; Government Ex. 1 ("GX 1").[1]

2.  Mr. Owen was charged with one count of conspiracy, in violation of 18 U.S.C. 1956 (h) to commit money laundering in financial transactions to conceal the proceeds of illegal activity, specifically the unlawful buying and selling of controlled substances in violation of 18 U.S.C. §1956 (a)(1) (B) (1).

---

[1] At the preliminary hearing, the USAO introduced the Criminal Complaint as GX 1. [11/7/19 Transcript ("Trans.") at p. 6].

[Doc. #1; GX 1 at p. 1].

3.  Having been arrested and released on pretrial release, Mr. Owen, appeared in Court and was released on bond on October 24, 2019 [Doc. #31].

4.  A preliminary hearing was held for Defendants Owen and Barton on November 7 and 14, 2019 in the Northern District of Illinois. [Doc. #41, 44].

5.  On December 3, 2019, this Court granted Defendants Owen and Barton and the USAO an extension of time to file a Closing Argument until December 20, 2019. [Doc. #52].

**II.  Applicable Legal Principles**

    **A.  Preliminary Hearing**

Rule 5.1(a) of the Federal Rules of Criminal Procedure guarantees (unless there has been an indictment) a defendant a preliminary hearing before a federal magistrate and allows the judicial officer to determine whether probable cause exists to believe that the defendant committed the offense. Fed. R. Crim. P. 5.1 (e).  Under Rule 5.1 (f) of the Rules "[i]f the magistrate judge finds no probable cause to believe an offense has been committed or the defendant committed it, the magistrate must dismiss the complaint and discharge the defendant."

    **B.  Conspiracy to Commit Money Laundering in violation of 18 U.S.C. §1956 (h) and §1956 (a)(1)(b)(i)**

18 U.S.C. §1956 (h) makes it a crime to engage in a conspiracy that violates Section 1956 (a)(1)(B)(i) which states:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduce a financial transaction which in fact involves the proceeds of specified unlawful activity–
>
> (B) knowing that the transaction is designed in whole or part–
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity

It is well settled that a person's mere association with persons suspected of criminal activity will not support that person's conviction for the crime of criminal conspiracy. *U.S. v. Xheka,* 704 F.2d 974, 988 (7th Cir. 1983), cert. denied, 464 U.S. 993 104 S.Ct. 486 (1984). Similarly, deeming " every unwitting helper (in a §1956 (h) case) of a criminal, a co-conspirator would turn virtually every crime into a conspiracy". U.S. v. McBride, 724 F.3d 754, 757 (7th Cir. 2013).

For purposes of Rule 5.1, the probable cause determination is made *de novo* relative to the arrest, based on the facts and circumstances as they exist at the time of the preliminary hearing. *U.S. v. Rodriguez,* 460 F.Supp.2d 902, 907 (S.D. Ind. 2006). Probable cause has not been defined by the Federal Rules of Criminal Procedure or the federal criminal code. *U.S. v. Infante*, 782 F.Supp.2d 815, 817 (D. Ariz. 2010). In reality, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317 (1983).

**III. There is No Probable Cause that Rick Owen Had Direct or Indirect Knowledge That Anything He, Bustamante or Barton Had Done Involved the Illegal Laundering of Proceeds From Unlawful Narcotics Activity**

    **A. There Is No Direct Evidence Offered That Showed There Was a Probability that Mr. Owen Knew He Was Involved in the Illegal Laundering of Proceeds from Unlawful Narcotics Activity**

Initially the Criminal Complaint contained conclusory language that Mr. Owen had assisted Bustamante in finding narcotics traffickers and other illicit proceeds owners who were willing to pay the (so-called) Bustamante MLO to launder their illicit proceeds. [Crim. Cmplt., GX1 at p. 4, ¶5B]. There is nothing in the remainder of the Criminal Complaint that made any reference that Mr. Owen recruited any of the alleged narcotic traffickers or other illicit proceeds owners referenced in that document. [GX1, Crim. Cmplt.]. Indeed when Agent Villa was asked to provide examples of such persons that Mr. Owen allegedly had assisted in finding, he was completely unable to do. [11/14/19 Trans. at p.105]. Similarly, while the Criminal Complaint, in a conclusory way, alleged that Mr. Owen recruited individuals, including CS2 with corporate bank accounts, through which the Bustamante MLO allegedly laundered illicit proceeds, no one other than CS 2 was mentioned in the Criminal Complaint or in Agent Villa's testimony. [Crim. Cmplt.; 11/7 and 14/19 Trans.]

The Criminal Complaint alleged that Mr. Owen introduced Bustamante

to CS2 in early 2016 and that Bustamante provided CS2 with documents containing the names of investors, who were interested in purchasing refinery-related equipment through CS2's oil refinery contracting company and also inventory lists from previous jobs. [Crim. Cmplt. at p. 14, ¶13b]. However there was nothing in the Criminal Complaint nor in Agent Villa's testimony that showed that the list of vendors or inventory lists from previous jobs provided to CS2 were false or fraudulent. [Crim. Cmplt.; 11/7 and 14/19 Trans.]

Similarly, while the Criminal Complaint alleged that Mr. Owen introduced Bustamante to CS2 in early 2016, it also alleged that there were no significant monetary transfers to Company A Bank Account 1 until August, 2017, approximately 1½ years later. [Crim. Cmplt. at p. 13-4, ¶12, 13b].[2] Neither the Criminal Complaint nor Agent Villa's testimony indicated that Mr. Owen, in 2016, 1½ years before the alleged Bustamante MLO even began, had any reason to believe that what Bustamante told CS2 about his legal line of work and history in doing that work was not true. [Crim. Cmplt.; 11/7/19 Trans.; 11/14/10 Trans. at p. 108-09]. In addition, while it was alleged that Mr. Owen instructed CS2 to transfer money that had been deposited into

---

[2] The Criminal Complaint alleged that "CS2 began laundering narcotic proceeds" through that account in early 2016 but since the Criminal Complaint alleged that CS2 did not begin to believe that narcotic proceeds were being laundered through his account until early 2018, and there is no other evidence to support the use of that account for laundering narcotic proceeds, that assertion regarding narcotic proceeds being laundered in his account in early 2016 has no factual basis. [Crim. Cmplt. at p. 13-4, ¶13a, d].

5

Company A Bank Account 1 to transfer the invoiced amounts to other bank accounts, no evidence was introduced to indicate that any of those accounts were connected to drug traffickers or persons seeking to hide illicit proceeds. [Crim. Cmplt.; 11/7 and 14/19 Trans.].

There is no direct evidence that Mr. Owen knew the purpose the CS2 arranged meeting between Bustamante and the undercover agents posing as pilots or what Bustamante needed the pilots for although there is evidence that he knew Bustamante was hiring pilots to fly a plane. [Crim. Cmplt. at p. 6-7, 17-28, ¶6d; ¶13g-24; 11/7/19 Trans. at p. 16-9]. There is also no direct evidence that Mr. Owen knew that "Lalo" was a drug trafficker although Mr. Owen did know that Bustamante and someone else had stolen a lot of money from him and therefore he had to do pickups for Lalo. [Crim. Cmplt. at p.6, 28-29, 31-3, ¶6e, ¶26-7, ¶33, ¶35]. Similarly, there is no direct evidence that in Mr. Bustamante's dealings with Defendant Barton that Bustamante told Mr. Owen that the money being sent to Barton came for narcotics proceeds. [Crim. Cmplt. at p. 35-9; ¶38-43, ¶45-9].

Finally, while Mr. Owen made travel arrangements for various trips taken by Bustamante and had some telephone conversations with him during the trips, there is no direct evidence that Mr. Owen knew those pickups involved illegal narcotic proceeds. [Crim. Cmplt. at p. 64-7, 78-80, 86-9, 108-09 ; ¶85-8, ¶113-5, ¶132, ¶135-7, ¶189-90].

**B.     The USAO Has Relied on Indirect Evidence Heavily Premised on Agents' Interpretation of Telephone Communications to Allege that Rick Owen Knew that the Work He Was Doing for Bustamante Involved Money Laundering of Illicit Narcotic Proceeds**

The USAO is very likely to contend that there was indirect evidence of facts that were sufficient to show that Mr. Owen had knowledge that his dealings with Bustamante, Barton and CS2 involved the money laundering of illicit narcotic proceeds and that therefore there is probable cause to charge him with being in a conspiracy that violates §1956 (h).  However, too much of that alleged indirect evidence is too heavily premised on agents' interpretations of what Mr. Owen or Bustamante were saying.  [*See e.g.* p. 26-7, ¶22a-b  where the agents make "they" into Mexico-based source of supply and p, 28, ¶24b-25].  The Seventh Circuit has recently reversed a drug conviction that was based on the interpretations that agents put on words used in telephone conversations.  *U.S. v Garcia*, 9`9F.3d 489, 503 (7th Cir. 2019 ("evidence that calls for inferences that are 'motivated or made possible by speculation'- especially inferences 'focused on a defendant's presence or association with criminals or their criminal activity'-will fail to carry the government's burden", citing *U.S. v. Jones,* 717 F.3d 336, 337 (7th Cir. 2013].

This Court should find that the use of such inferences did not result in a finding of probable cause against Mr. Owen in this case.

**IV.    Conclusion**

Wherefore, for the foregoing reasons, Mr. Owen respectfully requests that this Court dismiss the complaint against him for lack of probable cause.

Respectfully submitted,

s/Steven Saltzman
Attorney for Defendant Owen

Steven Saltzman
200 South Michigan Avenue, Ste. 201
Chicago, Illinois 60604
(312) 427-4500
SSaltzlaw@gmail.com
Date: December 20, 2019

## **PROOF OF SERVICE**

      I, <u>Steven Saltzman</u>, an attorney hereby certifies that on December 20, 2019, I served this Closing Memorandum of Rick Owen on Motion to Dismiss Complaint for Lack of Probable Cause in accordance with the Fed.Crim.P. 49, Fed.R.Civ.P.5 and LR5.5, and the General Order on Electronic Case Filing (ECF), the above stated motion was served pursuant to the district court's ECF system as to ECF filers.

                                                   <u>s/Steven Saltzman</u>

Steven Saltzman
200 S. Michigan Ave., Ste 201
Chicago, IL 60604
312-427-4500
SSaltzlaw@gmail.com